IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES CORNN, et al.,

                              Plaintiffs,

        v.

UNITED PARCEL SERVICE, INC.,

                              Defendant.

NO. C03-2001 TEH

ORDER DENYING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION OF EARLY
MORNING WORK CLAIM

        This matter comes before the Court on Plaintiffs' motion to certify a class on their

claim that Defendant United Parcel Service, Inc. ("UPS") maintained an inaccurate

timekeeping and payroll system that excluded hours worked by drivers before their

scheduled start times.  After carefully considering the parties' papers and the law governing

class certification, the Court finds oral argument to be unnecessary and now DENIES

Plaintiffs' motion for reasons discussed below.

**BACKGROUND**

        Plaintiffs, who work as package-car and other drivers at UPS, initially sought to

certify a class on their early morning work claim in their original motion for class

certification.  On March 14, 2005, this Court denied certification on that claim because

Plaintiffs failed to allege an early morning work claim in their first amended complaint,

which was the operative complaint at the time.  Mar. 14, 2005 Order Granting in Part &

Denying in Part Pls.' Mot. for Class Cert. at 15-16.  However, the Court invited Plaintiffs to

file a motion for leave to amend the complaint if they intended to pursue an early morning

work claim.  Plaintiffs filed their motion on April 11, 2005, and the Court granted leave to

amend on May 17, 2005.  On May 19, 2005, Plaintiffs filed their second amended complaint,

which included an early morning work claim as the fifth claim for relief.  Plaintiffs now seek

United States District Court

For the Northern District of California

to certify this claim for class treatment, with the proposed class including all package-car drivers who worked at UPS in California from May 13, 2000 to the present.[1]

Plaintiffs' early morning work claim is based on the difference between package-car drivers' scheduled start times and the times at which drivers punch in on their DIADs – what Plaintiffs call the "actual start time" but UPS calls the "check-in time."  UPS calculates the number of hours worked by a driver based on the driver's scheduled start time, unless the time the driver punched in is later than the scheduled start time, in which case the later punch-in time is used.  In essence, UPS does not record as hours worked time spent at UPS by drivers after they punch in but before their scheduled start times, nor does UPS record as hours worked time during which drivers were scheduled to be working but did not punch in. Plaintiffs argue that it is unlawful for UPS to fail to record as hours worked the time between drivers' punch-in times and their scheduled start times because drivers routinely perform work during those intervals.

UPS has the ability to adjust drivers' scheduled start times when the company requires drivers to arrive and start work earlier than originally scheduled, and UPS has actually adjusted scheduled start times according to this policy.  However, Plaintiffs nonetheless contend that they regularly perform work after punching in but before their scheduled start times, and that UPS has not adjusted their scheduled start times to reflect that work.

**LEGAL STANDARD**

A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified:

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to

---

[1]Plaintiffs contend that their May 13, 2004 class certification brief put UPS on notice that they were pursuing an early morning work claim on behalf of the proposed class.  They further contend that the four-year statute of limitations under California's unfair competition law applies to this claim.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Zinser*, 253 F.3d at 1186.  That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) provides for the maintenance of several different types of class actions. Fed. R. Civ. P. 23(b).  Plaintiffs seek to certify the proposed class under Rule 23(b)(3).  This rule allows a class to be certified if a court finds both that common questions of law or fact "predominate" over individual questions and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

The party seeking certification must provide facts to satisfy these requirements, and simply repeating the language of the rules in its moving papers is insufficient.  *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).  A district court must conduct a "rigorous analysis" of the moving party's claims to examine whether the requirements of Rule 23 are met.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).  However, although the court is "at liberty" to consider evidence that relates to the merits if such evidence also goes to the requirements of Rule 23, the court may not consider whether the party seeking class certification has stated a cause of action or is likely to prevail on the merits.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  If a district court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class.  *Zinser*, 253 F.3d at 1186.

**DISCUSSION**

In this case, UPS argues that Plaintiffs' early morning work claim is unsuitable for class treatment because Plaintiffs have failed to demonstrate that common questions of law or fact predominate over individual questions.  Plaintiffs contend that drivers routinely perform two types of work prior to their scheduled start times: (1) so-called "inside AM

3

United States District Court

For the Northern District of California

procedures," including changing into their uniforms, shining their shoes, gathering supplies, and collecting DIADs and verifying DIAD information, and (2) loading and sorting of packages onto package cars.  For the reasons set forth below, the Court agrees that Plaintiffs have failed to meet their burden on either issue, and the Court therefore finds that certification of Plaintiffs' early morning work claim would be inappropriate.

First, on the inside AM procedures issue, Plaintiffs have failed to present sufficient evidence of a class-wide practice that gives rise to liability.  Plaintiffs have presented a training module for package-car drivers that instructs drivers that they should be changed into their uniform, including shined shoes, and gather supplies and punch in on their DIADs prior to attending prework communication meetings ("PCMs") that begin at drivers' scheduled start times.  York Decl. Ex. W.  However, individual questions predominate over whether time spent on these activities should be counted as hours worked and, if so, how much time, if any, was spent on these activities and improperly excluded.  For example, Plaintiffs did not respond to evidence that UPS drivers in the Western Region, which includes southern California, have agreed that time spent changing into uniforms is not compensable.  Guerrero Decl. Ex. C at 167 (Western Region supplemental collective bargaining agreement, providing that, "It is agreed that each employee shall put on the uniform before reporting for duty and shall remove the uniform after being relieved from duty each day.  It is agreed that time spent in putting on and taking off the uniform shall not be paid for by the Employer.").  In Northern California, Plaintiffs Cornn, Marchant, and Duvoe – the only drivers for whom Plaintiffs provided declarations – stated that they normally arrive at work already changed into their uniforms.  Cornn Decl. ¶ 4; Marchant Decl. ¶ 4; Duvoe Decl. ¶ 5.  Plaintiffs make no claim that employees who change at home should be compensated for the time spent changing, nor do they argue that UPS should require drivers to change into their uniforms after they arrive at work.  Similarly, Cornn and Marchant both testified that they shined their shoes at home or simply purchased new shoes when they started looking worn.  Cornn Dep. at 81:15-25 (Waldman Decl. Ex. A); Marchant Dep. at 9:12-16 (Waldman Decl. Ex. B).

4

United States District Court
For the Northern District of California

1    Plaintiffs Cornn and Marchant also stated that they regularly download dispatch

2    information from the Enhanced DIAD Download ("EDD") system prior to their scheduled

3    start times.  Cornn Decl. ¶ 4; Marchant Decl. ¶ 4.  However, UPS's Pacific Region

4    Engineering Manager, whose coverage area includes all of California, has stated that "drivers

5    are instructed to upload EDD to their DIAD as part of their 'Inside A.M.' routine, which

6    takes place after the morning PCM."  Cox Decl. ¶ 22; *see also* Christensen Decl. ¶ 10 ("I

7    trained my drivers to download EDD after the PCM.").  Because PCMs begin at drivers'

8    scheduled start times, UPS therefore instructs drivers not to download EDD information until

9    after their scheduled start times.  Plaintiffs have not provided any evidence to the contrary.

10   Indeed, Marchant testified that no one ever instructed her that she had to download the EDD

11   information prior to her scheduled start time.  Marchant Dep. at 65:11-20.

12   As to gathering supplies, Plaintiffs themselves provided testimony by a UPS manager

13   that the list of supplies to be gathered is a long list, but many of the supplies would already

14   be in the drivers' vehicles.  Hurley Dep. at 91:21-26 (York Decl. Ex. S).  The instruction to

15   gather necessary supplies "is really more of a guideline.  We certainly don't expect our

16   drivers to go up and inventory their vehicles and that type of thing before they would report

17   to work.  So often the driver will not know that they don't have these supplies till – till after

18   they go up to their vehicle and they would have to return and gather some of these supplies."

19   *Id.* at 92:4-11.  Hurley also testified that he is aware of centers where the practice is for

20   drivers not to have all of their supplies ready when they punch in.  *Id.* at 93:6-8.  One UPS

21   center manager similarly stated that when he trained new drivers on UPS methods, he "would

22   instruct them that they were to collect supplies and take care of other tasks only after the

23   PCM (and therefore after the scheduled start)."  Christensen Decl. at ¶ 6.

24   Plaintiffs' own witness, Claude Reynolds, a former supervisor at UPS, testified that

25   drivers were never forced to start prior to their scheduled start times, nor was he aware of any

26   drivers who were disciplined for arriving exactly at their scheduled start times.  Reynolds

27   Dep. at 31:4-32:2 (Waldman Decl. Ex. D).  Reynolds stated that arriving at the scheduled

28   start time was "[n]ot acceptable, but never was there an instance where someone was

5

United States District Court

For the Northern District of California

1  disciplined." *Id.*  Similarly, Cornn testified that he is ready to work at his scheduled start

2  time whether he shows up twenty minutes prior to or exactly at his scheduled start time; his

3  arrival time varies and depends on when he can get his children ready for school.  Cornn

4  Dep. at 30:17-32:5.  Likewise, a UPS center manager declared that some drivers come to

5  work just prior to their scheduled start times but "are still able to perform all of their morning

6  routine duties because . . . they are supposed to be performing all of these duties *after* the

7  PCM (with the exception of punching-in)."  Christensen Decl. ¶ 9.

8       The only inside AM procedure for which there is adequate testimony of a class-wide

9  practice is the requirement that drivers punch in on their DIADs prior to their scheduled start

10  times.  However, this procedure takes only a matter of seconds.  Reynolds Dep. at 35:4-6

11  (punching in takes three seconds); Cox Decl. ¶ 7 (punching in takes "a few seconds").

12  Although Plaintiffs and UPS disagree over how to apply the *de minimis* rule to these

13  proceedings, it cannot be disputed that a few seconds constitutes *de minimis* work under any

14  interpretation of that rule.  *See, e.g.,* Cal. Dep't of Labor Standards & Enforcement Policies

15  & Interpretations Manual § 47.2.1.1 (stating that the *de minimis* rule applies "where there are

16  uncertain and indefinite periods of time involved of a few seconds or minutes duration, and

17  where the failure to count such time is due to considerations justified by industrial realities").

18  Plaintiffs have not, for example, provided evidence that it is possible to record time spent

19  punching in, nor have they even suggested that drivers should not be allowed to punch in on

20  their DIADs until precisely the time when they are scheduled to begin work.  Moreover,

21  Plaintiffs have failed to cite any authority for the proposition that time spent punching in

22  must be counted as part of hours worked under California law.

23       On Plaintiffs' claim that drivers routinely loaded and sorted packages onto package

24  cars, Plaintiffs cited to no evidence whatsoever.  *See* Reply at 7-8.  Instead, the portion of

25  Plaintiffs' brief devoted to this type of work cites only to allegations in the complaint and

26  statistical evidence that Plaintiffs intend to present.  This is insufficient to meet Plaintiffs'

27  burden of establishing, after a rigorous analysis, that the facts of this case support class

28  certification.  *See Doninger*, 564 F.2d at 1309.  Even if the Court considered the declaration

6

United States District Court

For the Northern District of California

of Claude Reynolds, which was not cited by Plaintiffs in the relevant section of their brief, that declaration is insufficient to establish a class-wide violation. Instead, Reynolds's statement that UPS drivers "commonly" pre-sorted or loaded their trucks prior to their scheduled start times could only potentially apply to the unnamed center at which Reynolds was a driver supervisor; Reynolds lacks personal knowledge of the practices at any other UPS facility.

UPS, by contrast, has presented evidence that the company instructs drivers not to work prior to their scheduled start times. For instance, a PCM briefing memorandum from November 1997 explains that "[n]o employee should perform work before start-time unless specifically requested to do so. In those cases, a member of management must approve an earlier start-time." Herron Ex. A. A labor relations manager stated that, in his experience in two California districts, "drivers are not permitted to be in the package loading area before their scheduled start. But when I have seen drivers in the loading area at such times, I have seen management immediately inform them that they must leave the area." Guerrero Decl. ¶ 13. Managers at two different California centers also explained that they instruct drivers that they are not permitted to perform work prior to their scheduled start times, and that they and the union stewards monitor drivers to ensure that drivers do not enter their trucks to perform work prior to their scheduled start times. Leong ¶ 7; O'Mahony ¶ 8.

UPS cites to evidence that Marchant sometimes, but not always, worked on her package car prior to her scheduled start time. Marchant Dep. at 73:15-74:2. However, there is no evidence that, on those days when Marchant did such work, UPS required that work or knew or had reason to believe such work was occurring. *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 582-85 (2000) (explaining that "hours worked" includes both time spent when an employee is required to be on the employer's premises and time spent working by an employee even if the employer has not required or requested that work, provided that the employer knows or has reason to believe that the employee is working). Nor is there evidence that, if UPS did require such work or know or have reason to believe that such work was occurring, the company did not adjust Marchant's scheduled start time accordingly.

7

United States District Court
For the Northern District of California

1    UPS does not dispute that it sometimes instructs drivers to work prior to their

2    scheduled start times either to attend trainings or to assist with preload operations when

3    necessary.  However, UPS has presented evidence that its policy is to pay drivers for such

4    time.  Cox Decl. ¶ 24; O'Mahony Decl. ¶ 7; Christensen Decl. ¶ 11.  Plaintiffs' witnesses

5    testified to the same effect.  For instance, Reynolds testified at his deposition that, when he

6    was an on-car supervisor, he would change a driver's scheduled start time if he called a

7    driver to come in early one day.  Reynolds Dep. at 23:3-24, 30:22-25.  Reynolds has also

8    never denied a request by a driver to change his or her scheduled start time because the driver

9    had a lot of work to do on their package car and performed that work prior to his or her

10   scheduled start time.  *Id.* at 37:19-38:20.  Plaintiff Marchant likewise testified that she knew

11   about the process for changing scheduled start times when called in to work early, and that

12   she sometimes changed her scheduled start time herself and, at other times, had her

13   scheduled start time changed by management employees.  Marchant Dep. at 11:19-13:11.

14   She has never been told to start work early and not had her scheduled start time adjusted

15   accordingly.  *Id.* at 54:1-25.  Similarly, Plaintiff Cornn testified that UPS changes his

16   scheduled start time "if they want you to come in for training or something."  Cornn Dep. at

17   63:10-17.  He testified that he did not recall whether the start time was always adjusted;

18   however, he further testified that he has the ability to change his scheduled start time on his

19   DIAD and that, the last time he was instructed to come in prior to his scheduled start time, he

20   was paid for that time.  *Id.* at 24:16-25:19.

21      In short, the Court finds insufficient evidence to conclude that class treatment of

22   Plaintiffs' early morning work claim is warranted.  The only class-wide evidence provided

23   by Plaintiffs demonstrates only that package-car drivers enter start times on their DIADs that

24   sometimes differ from the drivers' scheduled start times, and that UPS only begins to count

25   hours worked from drivers' scheduled start times, or from the punched-in time if the

26   punched-in time is later than the scheduled start time.  This practice would only be unlawful

27   if drivers were actually working during the time between when they punched in and when

28   they were scheduled to start work.  However, there is no common practice among package-

8

United States District Court

For the Northern District of California

1   car drivers as to when they punch in to work.  Some drivers may punch in immediately after

2   arriving at the building, while others may punch in just before their scheduled start times.

3   Cox Decl. ¶ 20; Leong Decl. ¶ 5.  In addition, drivers perform a variety of non-work-related

4   tasks, such as socializing, reading the newspaper, and drinking coffee or tea, after punching

5   in but before their scheduled start times.  Cox Decl. ¶ 23; Guerrero Decl. ¶ 12; Leong Decl.

6   ¶ 5; Reynolds Dep. at 39:5-13; Marchant Dep. at 19:5-20:8, 21:16-19.  If a driver punched in

7   thirty minutes prior to his or her scheduled start time but actually did no work during that

8   time, then UPS's practice of calculating hours worked based on the scheduled start time

9   would not be unlawful.  Because the Court cannot determine whether a driver performed

10  work during the interval in question without undertaking individualized inquiries that

11  predominate over any common questions, class certification would be inappropriate.

12

13  **CONCLUSION**

14          For all of the above reasons, Plaintiffs have failed to persuade the Court that UPS has

15  a practice common to the proposed class of inaccurately recording hours worked by failing to

16  record accurate start times.  Instead, individual issues predominate on Plaintiffs' early

17  morning work claim, the fifth claim for relief in Plaintiffs' second amended complaint.

18  Accordingly, with good cause appearing, Plaintiffs' motion to certify a class on that claim is

19  hereby DENIED.

20

21  **IT IS SO ORDERED.**

22

23  DATED ____08/26/05____

24                                          THELTON E. HENDERSON, JUDGE
                                            UNITED STATES DISTRICT COURT

25

26

27

28

9