IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES CORNN, et al.,

             Plaintiffs,

v.

UNITED PARCEL SERVICE, INC.

             Defendant.

NO. C03-2001 TEH

<u>ORDER DENYING UNITED PARCEL SERVICE, INC.'S OBJECTION TO SPECIAL MASTER'S DECISION DENYING UPS'S SECOND REQUEST TO DEPOSE ABSENT CLASS MEMBERS</u>

       This matter came before the Court on Monday, September 11, 2006, on Defendant United Parcel Service, Inc.'s ("UPS's") objection to the decision of the Court-appointed discovery master, Edward Swanson ("Special Master"), denying UPS's second request to depose absent class members. After careful consideration of the parties' written and oral arguments, this Court DENIES Defendant's objection for the reasons explained below.

**BACKGROUND**

       This is a class action complaint brought pursuant to Federal Rule of Civil Procedure 23 by all non-exempt, hourly California employees of UPS who held the positions of parcel package delivery drivers, feeder drivers, combination drivers and utility drivers during the period February 6, 1999 to the present. This action arises out of Plaintiffs' allegations that UPS has employed electronic timekeeping systems and other class-wide policies and procedures to keep from paying class members the wages to which they are lawfully entitled. The class consists of approximately 20,000 employees.

       On January 20, 2006, UPS requested to depose 1,000 absent class members in this matter. The Special Master denied UPS's request without prejudice, finding, *inter alia*, that UPS had not shown why depositions were necessary where interrogatories appeared sufficient to discover the limited scope of the information sought.

1    On June 7, 2006, UPS submitted a second proposal in which it requested to depose 80 absent class members. UPS proposed 60 depositions of individuals randomly selected "in proportion to the ratio each group bears to the total number of drivers from all participating categories statewide," Mot. at 7, and 20 depositions of individuals hand-selected by UPS.

The Special Master denied UPS's second request and ordered that if the company wishes to seek discovery of absent class members, it shall do so by way of interrogatories or a questionnaire. The Special Master concluded that UPS had not met its burden of establishing why depositions were necessary, as opposed to well-crafted and detailed interrogatories, and, further, that UPS had advanced no compelling rationale supporting the company's request for 80 depositions.

On July 10, 2006, UPS filed its timely objection to the Special Master's decision denying UPS's second request to depose absent class members. UPS argued that the Special Master's determination that interrogatories are a suitable alternative for depositions in this matter is erroneous because more extensive and detailed information can be elicited in a deposition than in response to interrogatories. Further, UPS asserted that its request is supported by precedent.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 53 governs the use of court-appointed special masters. Pursuant to Rule 53(g)(3) the court "must decide de novo all objections to findings of fact made or recommended by a master," Fed. R. Civ. P. 53(g)(3), "unless the parties stipulate, with the court's consent, that the findings will be reviewed for clear error or – with respect to a master appointed on the parties' consent or appointed to address pretrial or post-trial matters – that the findings will be final." Adv. Comm. Notes to 2003 Amendments to Fed. R. Civ. P. 53(g). "The district court also reviews de novo all 'objections to conclusions of law made or recommended by a master.'" *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418JW, 2005 WL 149555, at \*2 (N.D. Cal. June 21, 2005) (emphasis omitted) (citing Fed. R. Civ. P. 53(g)(4)). Thus, as the exceptions

2

1  to Rule 53(g) do not apply in this case, the Court applies a de novo standard of review in
2  analyzing the instant motion.

**DISCUSSION**

As an initial matter, the Court notes that both parties have devoted substantial written argument to whether UPS has demonstrated the need for discovery of absent class members. However, the Special Master previously ordered that UPS should be allowed "to seek discovery of absent class members," Special Master's Decision Regarding UPS's Request to Depose Absent Class Members at 3, and Plaintiffs have not objected to that decision. Accordingly, the Court accepts the Special Master's determination on this issue and does not intend to revisit it. Therefore, the Court need not consider arguments that refer to whether discovery of absent class members should be allowed, e.g., UPS's due process argument, Mot. at 10, Reply at 8-9.

UPS argues that it should be allowed to take 80 depositions of absent class members (60 randomly selected and 20 hand-selected by UPS) because other discovery devices, such as interrogatories or a questionnaire, are not suitable alternatives in this case. Although an absent class-action plaintiff is generally not required to do anything, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985), under certain circumstances, absent class members may be required to submit to discovery, *Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1326 n.5 (N.D. Ill. 1991) (citation omitted). To determine whether depositions of absent class members will be allowed, this Court adopts the legal standard drafted by the Special Master, with one exception, as discussed below:

> Where such discovery has been allowed, courts have required the proponent to demonstrate that (1) the discovery is not sought to take undue advantage of class members or with the purpose or effect of harassment or altering membership in the class; (2) the discovery is necessary at trial of issues common to the class; (3) responding to the discovery requests would not require the assistance of counsel; and (4) the discovery seeks information not already known by the proponent. *See On the House Syndication, Inc. v. Federal Express Corp.*, 203 F.R.D. 452, 455 (S.D. Cal. 2001); *Collins v. Int'l Dairy Queen*, 190 F.R.D. 629, 630-31 (M.D. Ga. 1999); *McCarthy v. Paine Webber Group, Inc.*, 164 F.R.D. 309, 313 (D. Conn. 1995). In addition, courts consider

> the need for efficiency and economy before ordering discovery. *See Klein v. King*, 132 F.R.D. 525 (N.D. Cal. 1990). Applying these principles, courts have found the burden on the defendant to justify discovery of absent class members by means of deposition is particularly heavy. *See Baldwin & Flynn v. National Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).

Special Master's Decision Regarding UPS's Request to Depose Absent Class Members at 2.

UPS urges the Court to eliminate the third factor from the legal standard drafted by the Special Master, "responding to the discovery requests would not require the assistance of counsel," *id.*, because "if all [absent class member] discovery requests that involve the assistance of class counsel are improper, this factor would effectively result in a ban of [absent class member] discovery." Reply at 2. The Court disagrees with UPS's conclusion, especially as discovery sought in the present case would not necessarily require the assistance of counsel and could be captured by interrogatories or a questionnaire administered by a third party given the limited scope of the information sought concerning individual employees' actions and understanding of company policy. However, the requirement appears unnecessarily restrictive and may be subsumed by general considerations of efficiency and economy regarding the use of discovery. Accordingly, the Court will not consider whether respondents would require the assistance of counsel in its analysis.

UPS argues that "[t]he terse, uninformative answers typically served in response to interrogatories are simply no substitute for the extensive, detailed information that can be elicited in even a short deposition." Mot. at 8. UPS contends that it cannot anticipate what information will be disclosed if it is provided "the opportunity to sit down with a class member for a couple of hours, and probe." *Id.* at 9. However, given that absent class members are generally not required to do anything, *Phillips Petroleum Co.*, 472 U.S. at 810, and the burden on defendants seeking deposition testimony rather than interrogatory responses is more severe, *see Clark v. Universal Builders, Inc.*, 501 F. 2d 324, 341 (7th Cir. 1974), *Baldwin*, 149 F.R.D. at 600, UPS's proffered rationale appears only to state the company's preference rather than provide sufficient justification for ordering depositions of absent class members. Moreover, UPS's contention that interrogatories would be an

4

"absurd" substitute for deposition testimony because respondents could answer in "vague generalities" that would not provide "any concrete, helpful information" is not persuasive. Mot. at 9. Deposition questions would likely elicit similar responses if asked in an open-ended manner. For example, UPS argues that had Plaintiff Eric Duvoe responded to an interrogatory that asked "whether UPS provided him with second meals on days he worked more than 10 hours, he probably would have answered 'no.'" *Id.* UPS contends that it "could not have guessed to ask an interrogatory about taking DIADs home before clocking out," as was Mr. Duvoe's practice. *Id.* However, as the Special Master concluded after reviewing Mr. Duvoe's transcript, "[m]ost of the information obtained on the relevant topics was obtained by straight-forward questions about whether Devoe [sic] took breaks, when he took them, how he recorded them, and what he was instructed about taking breaks." Special Master's Decision Regarding UPS's Second Request to Depose Absent Class Members at 2. Given the limited scope of the information sought, e.g., whether UPS "provided drivers with opportunities to take meals but drivers *voluntarily* chose not to take them," Reply at 5, or whether "drivers did not record their lunch periods because they took the same amount of time that the standard lunch program accounted for," *id.* at 6, it appears that questions could be drafted to account for various permutations of responses, and thus interrogatories or a questionnaire would be sufficient. The Court does not accept UPS's reluctance to draft well-crafted questions as proof of the impossibility of the undertaking in this matter.

Moreover, the Court is not persuaded by the cases cited by UPS. First, these cases are factually dissimilar as they involve relatively small class actions in which the court ordered deposition testimony. *See Kaas v. Pratt & Whitney*, No. 89-8343-CIV-PAINE, 1991 WL 158943, at *5 (S.D. Fla. Mar. 18, 1991) (approximately 100 class members, court ordered entire class could be deposed); *Rosen v. Reckitt & Colman, Inc.*, No. 91 CIV. 1675 (LMM), 1994 WL 652534, at *3, *12 (S.D.N.Y. Nov. 17, 1994) (50 class members, court ordered entire class could be deposed); *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1188 (E.D. Va. 1991) (127 class members, court ordered entire class could be deposed); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 449-51 (S.D.N.Y. 1995) (162 class members, court ordered

5

14 members of class could be deposed). Further, with the exception of *Brooks*, these cases all involved class actions brought under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.*, that incorporates the enforcement provisions of 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FSLA").[1] *Kaas*, 1991 WL 158943, at *2. There is a fundamental difference between a class action, such as this one, brought under Rule 23 of the Federal Rules of Civil Procedure and a class action pursued under § 216(b). *Id.* (citation omitted). Under Rule 23, each person is considered to be a class member unless he has opted out of the lawsuit. *Id.* (citation omitted). Further, "[n]othing in Rule 23 suggests that class members are deemed 'parties.'" *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D. Ga. 1972). By contrast, under § 216(b) "no person can become a party plaintiff . . . unless he has affirmatively 'opted into' the class." *Kaas*, 1991 WL 158934, at *2 (citation omitted). Pursuant to § 216(b), "[n]o employee shall be a party plaintiff to any such [class] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (held unconstitutional in part on other grounds by *Alden v. Maine*, 527 U.S. 704, 759 (1999)). The affirmative opt-in requirement for class actions brought under § 216(b), compared to Rule 23's opt-out requirement, represents a significant procedural difference.[2] By affirmatively electing to opt in, class members under § 216(b) have agreed to participate in the litigation to an extent that class members under Rule 23 have not. This may, in part, explain the courts' willingness to permit the depositions of absent class members in these class actions brought under the enforcement provisions of § 216(b). Because the cases cited

---

[1] In *Brooks*, the plaintiffs brought a class action under the FLSA, which, as explained above, also relies upon the enforcement provisions of 29 U.S.C. § 216(b). 759 F. Supp. at 1187.

[2] "[A] defendant who subjects [Rule 23] class members to [discovery requests] requires those members to take some affirmative action to remain in the class, effectively creating an 'opt in' requirement which is inconsistent with the 'opt out' provisions of Rule 23." *On the House Syndication, Inc.*, 203 F.R.D. at 456 (citation omitted). Of course, as noted above, although it is disfavored, under certain circumstances courts have allowed discovery of absent class members in Rule 23 class actions. *Long*, 761 F. Supp. at 1326 n.5 (citation omitted).

6

by UPS differ both factually and procedurally from the instant case, they will not be followed by this Court.

Finally, this Court does not adopt any requirement that the parties' discovery requests in this matter be supported by a statistical rationale, Special Master's Decision Regarding UPS's Second Request to Depose Absent Class Members at 3, as it appears that anecdotal evidence bearing upon the issues common to the class may be relevant at trial. However, the Court's recognition that anecdotal evidence may be relevant in this matter does not obviate the need for UPS to justify requesting discovery from a particular number of absent class members. Further, the discovery of anecdotal evidence bearing upon issues common to the class is not in itself an adequate justification for ordering depositions of absent class members as this Court has found that the limited scope of permissible inquiry in this matter may be captured by interrogatories or a questionnaire.[3]

**CONCLUSION**

Accordingly, for the above reasons, Defendant's Objection to Special Master's Decision Denying UPS's Second Request to Depose Absent Class Members is DENIED. Although UPS has demonstrated a need for discovery from absent class members, it has not satisfied the more severe burden required for ordering depositions as opposed to interrogatories. *Clark*, 501 F. 2d at 341. It appears that given the limited scope of the information sought, well-crafted questions could be drafted to account for various permutations of responses, and thus interrogatories or a questionnaire would be sufficient in this matter.

Moreover, pursuant to the Civil Justice Reform Act of 1990, which was passed by Congress to address "the dual problems of cost and delay in Federal civil litigation," S. Rep. No. 101-416, at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6808, district courts must

---

[3] This ruling does not preclude UPS from asserting that it is entitled to depose absent class members recently identified by Plaintiffs as potential witnesses. Neither the Special Master's decision nor the parties' arguments regarding UPS's objection to the decision considered whether UPS may depose absent class members who have been named as potential trial witnesses.

7

consider the need for economy and efficiency before ordering discovery. A principal cause of high litigation costs is discovery abuse. *Id.* at 6823. In fact, "[t]he most frequently cited types of lawyer abuse leading to high transaction costs are lawyers who 'over-discover' cases rather than focus on controlling issues and lawyers and litigants who use discovery as an adversarial tool to raise the stakes for their opponents." *Id.* at 6824 (citation omitted). Thus, it is the duty of the judge, as the sole representative of the public interest, to intervene in the discovery process where it is necessary to avoid high costs and excessive delay, *id.* at 6820, and thereby ensure "the deliberate and prompt adjudication of disputes," *id.* at 6811 (citing 136 Cong. Rec., Jan. 25, 1990). In accordance with the duties prescribed by the Civil Justice Reform Act, this Court will not order the more costly and burdensome method of discovery in this matter, depositions, where it appears that interrogatories or a questionnaire would be suitable alternatives.

**IT IS SO ORDERED.**

Dated:   09/14/06

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT